UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MBC GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-01517-JRO-TAB |
| | ) | |
| | ) | |
| WILLIAM MCCLAIN, | ) | |
| MARJORIE MCCLAIN, | ) | |
| ROBIN DAVIS, | ) | |
| HEATHER RODRIGUEZ GARCIA a/k/a | ) | |
| HEATHER HOEGEMAN, | ) | |
| CFA, INC. d/b/a CFA STAFFING, | ) | |
| CINTEMP, INC. d/b/a CTI PERSONNEL, | ) | |
| MAX CONSULTING, LLC, | ) | |
| COMFORT GUYS, INC., | ) | |
| RHONDARITA, INC., | ) | |
| LESLA, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING ORDER**

Plaintiff MBC Group, Inc. ("MBC Group") alleges that Defendants William McClain and Majorie McClain (the "McClains"); their associates, Defendants Robin Davis and Heather Rodriguez Garcia, alias Heather Hoegeman; and entities in which the McClains have a substantial financial interest, Defendants CFA, Inc. d/b/a CFA Staffing, Cintemp, Inc. d/b/a CTI Personnel, Max Consulting, LLC, Comfort Guys, Inc., RhondaRita, Inc., and Lesla, Inc. (collectively "Defendants"), have stolen $34,731,547.58 from MBC Group through a complex web of forged and fraudulent documents and hundreds of illegal financial transactions.  Dkt. 23-1.

MBC Group now moves for an *ex parte* temporary restraining order imposing a freeze on funds and assets traceable to specific accounts from which Defendants allegedly have accessed and spent millions of dollars illegally. Dkt. 24. Specifically, MBC Group seeks imposition of a constructive trust on all disputed funds traceable to Defendants' illegal conduct, preservation of the disputed funds and assets acquired therewith, a freeze of identified accounts, a sworn accounting and disclosure by each named Defendant, and a restraint on Defendants' access to various facets of and systems associated with MBC Group's business.

MBC Group moves *ex parte* for temporary injunctive relief on the grounds that Defendants are actively siphoning its assets at this time and are likely to accelerate their misconduct and dissipate their ill-gotten gains, causing irreparable harm to MBC Group.

For the reasons stated below, the motion for *ex parte* temporary restraining order, dkt. [24], is **GRANTED**.

## I. LEGAL STANDARD

Preliminary injunctive relief is "'an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'" *See Cassell v. Snyders*, 990 F.3d 539, 544 (7th Cir. 2021) (quoting *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020)); *see also Eicher Motors Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 794 F. Supp. 3d 543, 553 (N.D. Ill. 2025) ("[P]rejudgment asset restraints ought to be the rare exception[.]"). The dangers

of this power only grow when a party asks the Court to exercise it *ex parte*, as MBC Group does here.

The Court may grant a temporary restraining order upon MBC Group's showing of (1) some likelihood of succeeding on the merits, (2) irreparable harm for which there is no adequate remedy at law, (3) the balance of harms favors MBC Group, and (4) that the order is in the public interest. *Abbott Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 11–12 (7th Cir. 1992); *see Barker v. Reagle*, No. 1:23-cv-00994-JMS-TAB, 2023 WL 3918964, at *2 (S.D. Ind. June 9, 2023) ("Courts generally apply the same equitable standards to a motion for a temporary restraining order as they do to a motion for a preliminary injunction.").

The Court may only issue a temporary restraining order without notice to Defendants if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

## II. DISCUSSION

MBC Group alleges in its verified complaint, dkt. 23-1, that it faces immediate and irreparable injury in the form of Defendants dissipating millions in stolen funds, hence making recovery impossible, and that Defendants have demonstrated the ability to manipulate financial institutions through forgery and fraud. MBC Group filed this lawsuit in federal court, asserting violations of the

federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against Defendants William McClain, Robin Davis, and Heather Rodriguez Garcia, and various state-law claims against these and the remaining Defendants.  These state-law claims include, in relevant part, claims under the Indiana Corrupt Business Influence Act ("CBI"), commonly known as the Indiana RICO statute, Ind. Code § 35-45-6-2, Dkt. 23-1 ¶¶ 332–440; common law fraud, *id.* ¶¶ 447–454; and unjust enrichment, *id.* ¶¶ 472–478.  The verified complaint seeks damages and fees as well as equitable and injunctive relief, including "a constructive trust and/or equitable lien imposed over the misappropriated funds and any and all assets purchased with them . . . ."  *Id.* at 82.

MBC Group has satisfied the four criteria for obtaining a temporary restraining order without notice to any adverse party.  *See Abbott Lab'ys*, 971 F.2d at 11–12.

### A.   Likelihood of Success on the Merits

First, MBC Group has at least some likelihood of succeeding on the merits. At this early stage, likelihood of success on the merits does not mean proof by a preponderance of the evidence.  *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).  But it is not enough for a case's chances to be merely "better than negligible."  *Id.* at 762.  The Supreme Court has categorized the standard as requiring a "strong showing" that the plaintiff is likely to succeed. *Nken v. Holder*, 556 U.S. 418, 434–35 (2009).  As the Seventh Circuit explains, this normally requires "a demonstration of how the applicant proposes to prove the key elements of its case."  *Pritzker*, 973 F.3d at 763.  The Seventh Circuit

4

conducts this analysis on a "sliding scale." *Mays v. Dart*, 974 F.3d 810, 822 (7th Cir. 2020). Under the sliding scale approach, great risk of harm to plaintiffs coupled with a slight risk of harm to defendants demands a somewhat less strong merits case than would be required in other scenarios. *Id.* (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).[1]

Here, the eighty-three-page verified complaint describes a long-running scheme by Defendants to misappropriate millions of dollars from MBC Group through forged documents and false representations over the course of several years. Dkt. 23-1 ¶¶ 27–104. MBC Group alleges the essential elements of a federal RICO and Indiana CBI claim, namely that Defendants William McClain, Robin Davis, and Heather Rodriguez Garcia were part of an enterprise and engaged in a pattern of racketeering activity over the course of many years through their commission of various predicate criminal acts, such as wire fraud and forgery. *See generally PD Finance, LLC, v. Fall*, No. 1:25-cv-01603-JRO-KMB, 2026 WL 1967010, at *6 (S.D. Ind. July 8, 2026) (summarizing elements of federal RICO claim). While similar, "th[e] scope of liability under the Indiana [CBI] is broader than under the Federal [RICO] Act." *Keesling v. Beegle*, 880 N.E.2d 1202, 1206 (Ind. 2008). Specifically, the Indiana CBI imposes "liability both on persons who conduct the activities of a racketeering enterprise and on those who otherwise participate in the activities of a racketeering enterprise." *Id.*

---

[1] Although the cases cited in this paragraph review preliminary injunctions, the standards for granting a temporary restraining order and preliminary injunction are the same. *USA-Halal Chamber of Com., Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) (collecting cases).

Upon initial review, the specific allegations that sound in fraud are stated with particularity, referencing the who, what, when, where, and why of specific transactions and providing robust detail. *E.g.*, dkt. 23-1 ¶¶ 114–115 ("On November 17, 2025, Defendant Bill McClain wrote check No. 6827 from MBC's PNC Bank account for $15,681.10 to payee American Express, to satisfy a financial obligation of RhondaRita. This constitutes wire fraud . . . ."). These allegations appear likely to satisfy pleading standards under Federal Rules of Civil Procedure Rule 8 and 9 for the claims that sound in fraud.

MBC Group also demonstrates a likelihood of success on its claims for injunctive and equitable relief pursuant to the Indiana CBI statute. The relief it seeks includes an order freezing the funds and assets traceable to Defendants' misconduct alleged in the verified complaint. Dkt. 23-1 at 82. The Court may issue an order freezing assets when a suit seeks equitable relief. *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999)). Indiana's CBI statute expressly states that "the court may order a temporary restraining order or a preliminary injunction, but only after a showing of immediate danger of significant loss or damage to the aggrieved person" in an action for injunctive relief from corrupt business influence.[2] Ind. Code § 34-24-2-6; *see also Indiana*

---

[2] Further, financial institutions that transfer funds for Defendants are bound by this Order if they receive actual notice of it. *Blockowicz v. Williams*, 630 F.3d 563, 567 (7th Cir. 2010) (holding that a nonparty with actual notice of the injunction is bound by the injunction if he aids or abets an enjoined party in violating the injunction or is in privity with an enjoined party); Fed. R. Civ. P. 65(d)(2)(C) (persons "in active concert or participation with" the parties are bound if notified).

6

*ex rel. Zoeller v. Pastrick,* 696 F. Supp. 2d 970, 991 (N.D. Ind. 2010) (noting in dicta that "the Indiana little RICO statute allows injunctive relief for any 'aggrieved person,' Ind. Code § 34–24–2–6(a)").  MBC Group's verified complaint makes that showing.

Beyond injunctive relief under the Indiana CBI, MBC Group seeks a constructive trust over all funds and assets traceable to Defendants' scheme. Dkt. 23-1 at 82.  A constructive trust is an equitable remedy that Indiana imposes to prevent unjust enrichment where property is obtained by actual or constructive fraud.  *Hall v. Ind. Dep't of State Revenue,* 351 N.E.2d 35, 39 (Ind. Ct. App. 1976); *see also Matter of Teranis,* 128 F.3d 469, 473 (7th Cir. 1997) ("A constructive trust . . . may be imposed only in limited circumstances to prevent unjust enrichment.").  The constructive trust is a "fiction of equity," *Duran v. Komyatte,* 490 N.E.2d 388, 392 (Ind. Ct. App. 1986), and it may be applied "to facilitate the return of . . . stolen money," *Hicks v. State,* 635 N.E.2d 1151, 1155 (Ind. Ct. App. 1994).  When a court imposes this remedy, all funds and assets traceable to the wrongdoing are held by the wrongdoer in trust and for the benefit of the wronged party.  *Id.* at 1156–57.

MBC Group has demonstrated in great detail that the funds and assets it seeks to recover are identifiable and traceable.  Dkts. 12-1, 12-2.  Coupled with the sworn statements in the verified complaint explaining Defendants' actual and fraud, MBC Group has shown a likelihood of success on its equitable claims, including its claim for unjust enrichment and for a constructive trust in a

specific, identifiable fund of $34,741,547.58—the amount wrongly taken from MBC Group in which it asserts an equitable ownership interest.

## B.    Irreparable Harm

As to the second prong, MBC Group can also show irreparable harm. Damages are normally an adequate remedy at law for the theft of identifiable money.  *Fuelmaster of Am. LLC v. Quick Fuel Transp., Inc.*, No. 1:23-cv-02285-JPH-MJD, 2023 WL 12306222, at *3 (S.D. Ind. Dec. 23, 2023).  But MBC Group does not seek only to recoup the $34,731,547.58 sum as mere damages but to recoup the specific, traceable funds Defendants misappropriated and to enjoin Defendants from perpetuating further ongoing fraud and other racketeering activity against MBC Group.  Dkt. 23-1 at 81–82.

MBC Group's verified complaint also demonstrates that Defendants' wealth is generated by taking and dissipating MBC Group's own resources; it does not have some independent source.  For example, the McClains' down payment on their Florida condominium and William McClain's $10.225 million in unauthorized compensation in 2021 were funded by ill-gotten gains from MBC Group, not another pot of money or revenue stream that can be used to pay damages.  Dkt. 23-1 ¶¶ 88–89, 178.  Once this stream is cut off, it is reasonable to conclude that Defendants may become insolvent and unable to make MBC Group whole.  *See Deckert v. Indep. Shares Corp.*, 311 U.S. 282, 290 (1940); *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Under these circumstances, MBC Group has no adequate remedy at law to be made whole, as tracing and recouping all of Defendants' ill-gotten gains would

be required to achieve that goal. Thus, MBC Group's requested relief is necessary to avoid irreparable harm.

## C.   Balance of Harms

The balance of harms favors MBC Group, who has lost significant assets through Defendants' years-long and continuing conduct. The Court acknowledges Defendants also face the risk of irreparable harm to their finances and businesses imposed by the freeze on their assets. MBC Group's likelihood of success on the merits means this risk need not alter the Court's conclusion, especially when any risk is compared to MBC Group's demonstrated losses. *Roland Machinery*, 749 F.2d at 387 ("The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor."). Nor does the Court consider that the lack of access to ill-gotten gains should factor heavily into the balance of harms. That said, the Court's temporary restraining order provides Defendants reasonable expense allowances to mitigate any harms that the Court's order may cause, as discussed in the temporary restraining order that shall issue today by separate entry.

## D.   Public Interest

The public interest favors combatting fraud and ensuring the legitimacy and accuracy of financial transactions in this district. *See Domanus v. Lewicki,* 857 F. Supp. 2d 719, 727 (N.D. Ill. 2012); *Integrity Trade Servs. v. Integrity Emp. Partners, LLC,* No. 3:15-cv-205-JD, 2015 WL 10934322, at *2 ("[T]he public interest is best served by temporarily restraining defendants' likely illegal activities.").

9

### E.   No Notice Criteria

MBC Group has also fully complied with the preconditions for obtaining a temporary restraining order without notice to Defendants. *See Am. Can Co. v. Mansukhani*, 742 F.2d 314, 323 (7th Cir. 1984) (recognizing that "ex parte orders of very limited scope and brief duration may be justified to preserve evidence where the applicant shows that notice would result in destruction of evidence"); *cf. Travelers Cas. & Sur. Co. v. Wells Fargo Bank, NA*, No. 3:09 CV 501 PPS, 2009 WL 4881079, at *4 (N.D. Ind. Dec. 9, 2009) (denying motion for preliminary injunction where plaintiff lacked evidence that defendants were dissipating funds, hiding assets, or at risk of insolvency). MBC Group's attorney certified that notice should not be required because it "would likely result in immediate and accelerated asset dissipation, destruction of evidence, and manipulation of records." Dkt. 12 at 8. The Court grants MBC Group's motion without notice for this reason. *See* Fed. R. Civ. P. 65(b)(1).

### F.   Bond

Rule 65(c) requires the Court to issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." While fixing a bond is an exercise of the Court's discretion, the Seventh Circuit cautions district courts to "err on the high side." *Mead Johnson & Co. v. Abbott Lab'ys*, 201 F.3d 883, 888 (7th Cir.), *amended on denial of reh'g*, 209 F.3d 1032 (7th Cir. 2000). In its verified complaint, MBC Group alleges Defendants have stolen more than $2 million in 2026 alone. Dkt.

23-1 ¶ 99.   While the Court has limited knowledge of Defendants' business dealings, this Order is also limited both in duration, to nine (9) days, and in scope, authorizing expenditures for both personal and business expenses monthly.   Given these parameters, the Court finds a bond of $1,000,000.00 appropriate to protect the interests of Defendants.

### III. CONCLUSION AND TEMPORARY RELIEF

Considering these reasons, the Court **GRANTS** MBC Group's Motion for a Temporary Restraining Order.  Dkt. [24].  A separate temporary restraining order **shall issue** contemporaneously with this order.  *See* Fed. R. Civ. P. 65(d).  Security for this temporary restraining order is set at $1,000,000.00 as an amount proper to pay Defendants' costs and damages if any Defendant is wrongfully enjoined or restrained.  Fed. R. Civ. P. 65(c).  MBC Group's motion to maintain this case under seal, dkt. [8], is **GRANTED** to the extent that the case has heretofore been sealed.  Because the Court grants the temporary restraining order MBC Group requests, the seal has served its purpose.  *See* dkt. 8 at 2 ("As soon as Defendants have been so restrained, the seal can appropriately be lifted.").  The clerk **is directed** to **immediately** unseal this case, notwithstanding Local Rule 5-11.

MBC Group's Motion for Preservation of Evidence and Expedited Discovery, dkt. 10, remains pending before Magistrate Judge Tim A. Baker.

**SO ORDERED.**

Date: 7/29/2026

Time: 6:00 p.m.

Justin R. Olson
United States District Judge
Southern District of Indiana

11

Distribution:

Jason W. Bennett
Stuart & Branigin LLP
jwb@stuartlaw.com

Danielle Kay Fortin
Stuart & Branigin
dkf@stuartlaw.com

Erin Leilani Lillian
Stuart & Branigin LLP
ell@stuartlaw.com

James F. Olds
STUART & BRANIGIN LLP
jfo@stuartlaw.com

Scotty N. Teal
STUART & BRANIGAN
snt@stuartlaw.com